UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RANDA J. B., | ) |
| | ) |
|       *Plaintiff* | ) |
| | ) |
| v. | )   No. 1:19-cv-00543-JDL |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       *Defendant* | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability (SSD) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand primarily on the basis that the ALJ erroneously evaluated certain opinion evidence when determining her residual functional capacity (RFC). *See* [Plaintiff's] Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 12) at 5-9. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.[2]

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] This case returns to this court after the First Circuit vacated a decision of this court affirming a prior ALJ's decision and remanded this case with directions that this court remand it to the commissioner for further proceedings. *See Boyer v. Colvin*, No. 15-2542, 2016 WL 11618610 (1st Cir. Oct. 5, 2016). This court did so, and the ALJ issued a decision dated March 7, 2018. *See* Record at 432. The plaintiff appealed that decision to the Appeals Council, which issued an order dated January 14, 2019, remanding the case to the ALJ for further proceedings. *See* Record at 432-34. A different ALJ conducted further proceedings and issued the decision at issue on July 29, 2019. *See id.* at 223, 233.

relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2007, Finding 1, Record at 225; that, through her date last insured (DLI), she had the severe impairments of depressive disorder, not otherwise specified, and attention deficit hyperactivity disorder, Finding 3, *id.* at 226; that, through her DLI, she had the RFC to perform a full range of work at all exertional levels, understand and carry out simple one- or two-step instructions, understand and carry out detailed but uninvolved written or oral instructions involving several concrete variables in or from standardized situations, work with coworkers and supervisors, and attend to simple changes in the routine job setting, but that she had to avoid tasks involving a variety of instructions or tasks and work requiring contact with the public, Finding 5, *id.* at 228; that, through her DLI, considering her age (37 years old, defined as a younger individual, as of her DLI, March 31, 2007), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 231; and that she, therefore, had not been disabled from May 21, 2001, her alleged onset date of disability, through her DLI, March 31, 2007, Finding 11, *id.* at 232. The Appeals Council declined to review the decision, *id.* at 203-05, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Physical Residual Functional Capacity

The plaintiff contends that the ALJ's findings regarding her physical impairments and RFC are "not supported by the medical expert opinion testimony upon which the decision purports to rely." Statement of Errors at 7. Specifically, she challenges the ALJ's reliance on the testimony of Steven A. Golub, M.D., an impartial medical expert, in determining that the plaintiff's De Quervain's tenosynovitis of her left upper extremity imposed no work-related limitations. *See id.*; Record at 226. The plaintiff argues that the ALJ's reliance on Dr. Golub's testimony was misplaced because Dr. Golub acknowledged that he had not reviewed a September 2003 disability rating decision from the United States Department of Veterans Affairs ("the VA") awarding partial disability benefits to the plaintiff based on her tenosynovitis. *See* Statement of Errors at 7; Record at 254. According to the plaintiff, this error was harmful because the VA disability rating decision and her own testimony establish that she had functional limitations relating to handling objects and could not perform the jobs identified by the vocational expert (VE), all of which require frequent handling. *See* Statement of Errors at 7-8.

The first flaw in the plaintiff's argument is that she fails to acknowledge that, although Dr. Golub did not review the VA disability rating decision itself, he did review her extensive medical records – many of which were from the VA – and testified that he found no evidence of

ongoing functional restrictions in the plaintiff's left upper extremity, hand, and/or thumb after she had corrective surgery for her tenosynovitis in February 2002. Record at 254-56. This is reflected in the following exchange between the ALJ and Dr. Golub:

> [ALJ:] . . . So from your review of the record, do you see any physical condition that impacted [the plaintiff's] ability to perform basic work activity, sit, stand, walk, lift, carry, push, pull at any time between May, 2001, and March 31, 2007?
>
> [Dr. Golub:] The only issue would have been that left upper extremity surgical procedure in February, '02, but that would – that should be expected to heal well, and not have any further issue associated with it.

*Id.* at 253. Additionally, when asked by the plaintiff's counsel whether he saw evidence of a limited range of motion in the plaintiff's left upper extremity, Dr. Golub replied, "[I]t was less a matter of a restricted range of motion as it was the tenosynovitis that was causing restriction of the distribution of that particular tendon. So once corrected, it should not have an implication to the function of the left upper extremity." *Id.* at 255.

The plaintiff points to nothing in her extensive medical records that contradicts Dr. Golub's expert testimony. Statement of Errors at 7-8. Although the plaintiff's counsel contended at oral argument that the plaintiff's VA disability rating decisions memorialized medical records that had been lost due to the passage of time, this court previously rejected a similar argument – that "there must have been medical records to support the VA rating in 2003" – as speculative and insufficient "to carry a claimant's evidentiary burden." *Boyer v. Colvin*, No. 1:15-cv-28-JHR, 2015 WL 6123525, at *3-4 (D. Me. Oct. 15, 2015), *vacated on other grounds*, No. 15-2542, 2016 WL 11618610 (1st Cir. Oct. 5, 2016). The commissioner points out, too, that in March 2007, shortly before her DLI, the plaintiff reported "no localized joint pain, and no limb pain" during a medical appointment, and the attending physician found no musculoskeletal system abnormalities. Record

at 1418-19; Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 14) at 5.

The plaintiff also fails to explain how reviewing the VA disability rating decisions would have necessarily changed Dr. Golub's testimony. *See* Statement of Errors at 7-8; *O'Bannon v. Colvin*, Civil No. 1:13-cv-207-DBH, 2014 WL 1767128, at *7 (D. Me. Apr. 29, 2014) (holding that a claimant must demonstrate why evidence unseen by medical experts "would necessarily have altered their opinions in a manner favorable to the [claimant]" in order to obtain a remand on that basis). Of the VA disability rating decisions she cites, only two predate her DLI: a 2002 decision that assigned a 10 percent disability rating to her tenosynovitis based on an examination that revealed a "slight limitation of motion with pain on lifting or manipulation" after her surgery, and the 2003 decision, which increased that rating to 40 percent without detailed explanation.[3] Record at 159-61, 716-17. Given that the 2002 decision described only a slight limitation and the 2003 decision lacks explanation, it is highly unlikely that they would have changed Dr. Golub's opinion.

In fact, the plaintiff's counsel described the 2003 disability rating decision to Dr. Golub, explaining that "[i]t was an award of partial disability based on physical impairments of left tenosynovitis," and asked him whether it was still his opinion that she did not have a severe impairment to her left upper extremity. *Id*. at 254-55. Dr. Golub reiterated that any issues should not have continued post-surgery. Although Dr. Golub subsequently agreed with the plaintiff that such issues "would be better identified by an examination[,]" the ALJ again asked him whether he

---

[3] To the extent that the plaintiff attempts to challenge Dr. Golub's testimony by pointing to a 2009 VA disability rating decision postdating her DLI, *see* Statement of Errors at 7, she fails to demonstrate how that decision is material to her claims. *See*, *e.g.*, *Connolly v. Colvin*, No. 2:14-cv-292-JHR, 2015 WL 1859011, at *1 (D. Me. Apr. 22, 2015) (claimant failed to demonstrate that a VA disability rating decision issued nearly nine months after ALJ's decision was material and, hence, should be added to the record).

saw evidence of "ongoing functional restrictions on the [plaintiff's] left hand, or left thumb[,]" to which Dr. Golub replied, "No[.]"  *Id.* at 256.

The plaintiff attempts to bolster her argument regarding the VA disability rating decisions by pointing out that they are consistent with her own testimony "that she remained more limited in handling objects with her left upper extremity after her surgery in 2002[.]"  Statement of Errors at 7-8; Record at 301-02.  The mere fact that the VA disability rating decisions are consistent with her testimony, however, does not demonstrate that Dr. Golub necessarily would have changed his opinion had he reviewed them.  Moreover, the plaintiff does not challenge the ALJ's finding – in line with Dr. Golub's testimony – that her statements concerning "the intensity, persistence, and limiting effects" of her symptoms were "not entirely consistent with the medical and other evidence in the record[.]"  Record at 229.

For these reasons, the plaintiff has failed to demonstrate that the ALJ erred in relying on Dr. Golub's testimony when determining her physical RFC.  Because the ALJ's RFC determination is consistent with Dr. Golub's testimony that he saw no evidence of ongoing functional limitations relating to the plaintiff's tenosynovitis, it is supported by substantial evidence.  In any event, the plaintiff fails to identify evidence of greater limitation.  Remand, accordingly, is unwarranted on the basis of this point of error.  *See, e.g.*, *Dunning v. Colvin*, No. 2:14-cv-00401-JCN, 2015 WL 4139618, at *2 (D. Me. July 9, 2015) ("If error occurred at [S]tep 2, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the

[c]ommissioner's RFC finding, and that the additional restriction is material to the ALJ's 'not disabled' finding at [S]tep 4 or [S]tep 5.").[4]

### B. Mental Residual Functional Capacity

In determining the plaintiff's mental RFC, the ALJ "relied most strongly on the opinion of psychologist Dr. [Ira] Hymoff[, Ph.D.]" Record at 229. The plaintiff contends, however, that the ALJ's finding that she had the capacity to follow "'detailed but uninvolved'" instructions, Finding 5, *id.* at 228, is inconsistent with Dr. Hymoff's testimony that she was limited to performing "fairly simple, routine, repetitive tasks" with no "detailed, complex instructions[,]" *id.* at 268. This inconsistency, the plaintiff asserts, was harmful because two of the jobs identified by the VE as ones she could perform have a General Educational Development (GED) reasoning level of 2, requiring workers to "carry out detailed but uninvolved . . . instructions." *Dictionary of Occupational Titles* §§ 318.687-010, 726.684-110 (U.S. Dep't of Labor 4th ed., rev. 1991) (DOT); *see* Statement of Errors at 8-9; Record at 232, 308-09.

Even assuming, *arguendo*, that the ALJ's RFC finding is inconsistent with Dr. Hymoff's testimony, the plaintiff has failed to demonstrate any prejudice stemming from the purported inconsistency. In addition to the two jobs that have a GED reasoning level of 2, the VE also identified a cleaner/housekeeper job that has a GED reasoning level of 1, *see* Record at 309,

---

[4] The plaintiff argued in passing in her statement of errors, and emphasized at oral argument, that the ALJ replicated an error that led to the Appeals Council's 2019 remand order by failing to adequately develop and analyze the plaintiff's physical impairments as of her DLI, specifically, the failure to explain why, in the prior ALJ's view, the September 2003 VA disability rating decision had no value in assessing the plaintiff's physical impairments. *See* Statement of Errors at 7-8; Record at 433. The plaintiff complained that, in the decision at issue, the ALJ (i) gave short shrift to the 2002 and 2003 VA disability rating decisions, which indicated, consistent with her testimony, that she remained limited in handling objects after her 2002 surgery, and (ii) erred in failing to provide those VA disability rating decisions to Dr. Golub for his review. *See* Statement of Errors at 7-8. At oral argument, her counsel elaborated that the ALJ had failed to resolve the discrepancy between the prior ALJ's finding of no severe physical impairment and the VA disability rating decisions predating the plaintiff's DLI, as directed by the Appeals Council. *See* Record at 433. While the Appeals Council remanded that case in part because of error in the handling of the 2003 VA disability rating decision, it did not decree that the VA decision be handled in any particular manner. *See id.* In any event, any error is harmless for the reasons discussed above.

requiring workers to "carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables[,]" DOT § 323.687-014.  The plaintiff does not argue that there is any conflict between the requirements of the cleaner/housekeeper job and the limitations opined by Dr. Hymoff, nor does she argue that cleaner/housekeeper jobs are not available in significant numbers nationally.  *See* Statement of Errors at 8-9.  Indeed, the ALJ found – consistent with the VE's testimony – that there are 150,000 cleaner/housekeeper jobs in the national economy.  *See* Record at 232, 309.  Because "a single job available in significant numbers in the national economy is sufficient to meet the commissioner's burden at Step 5[,]" the plaintiff is not entitled to remand on this basis.  *Dana v. Astrue*, Civil No. 09-514-BW, 2010 WL 3397465, at *3 (D. Me. Aug. 24, 2010) (rec. dec., *aff'd* Sept. 13, 2010); *see also Vining v. Astrue*, 720 F. Supp. 2d 126, 136 (D. Me. 2010) (holding that as few as 11,000 jobs nationwide constitute a "significant number").

      The plaintiff also argues that the ALJ should have at least inquired further about the "internal conflict" in the VE's testimony on cross-examination that an individual who was unable to understand and carry out detailed, complex instructions could perform GED reasoning level 2 jobs.  Statement of Errors at 8-9; Record at 313-14.  Although ALJs have an affirmative obligation to inquire whether there is any conflict between VE testimony and the information contained in the DOT, a claimant waives a claim of failure to identify such conflicts unless she can show that the ALJ should have picked up on them without any assistance.[5]  *See, e.g.*, *Sue M. v. Berryhill*, No. 1:17-cv-00303-NT, 2018 WL 3698906, at *3 (D. Me. Aug. 3, 2018) (rec. dec., *aff'd* Aug. 22, 2018); *see also Baker v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00167-JAW, 2011 WL 1298694,

---

[5] Pertinent to this point of error, the ALJ instructed the VE at the beginning of his testimony, "I am going to ask that if you have any information or testimony that deviates from the . . . Dictionary of Occupational Titles, or the Selected Characteristics of Occupations, that you would bring it to my attention[.]"  Record at 306.

at \*5 (D. Me. Mar. 31, 2011) (rec. dec., *aff'd* Apr. 19, 2011) ("There is an expectation that counsel will explore . . . concerns with the [VE] at the hearing, not leave such matters to technical challenges before the courts."). The plaintiff here has waived her challenge because she did not bring the purported conflict to the attention of the ALJ during the hearing and makes no attempt on appeal to demonstrate why it was so obvious that the ALJ should have identified it *sua sponte*. *See* Record at 312-15; Statement of Errors at 8-9; *cf. Sue M.*, 2018 WL 3698906, at \*2-5 (holding that a purported conflict between the ability "to carry out detailed but uninvolved" instructions required by GED reasoning level 2 jobs and a limitation against "detailed instruction" was not so apparent that the ALJ should have picked up on it without assistance from the claimant (emphasis, citation, and internal quotation marks omitted)).

### C. The ALJ's Failure to Evaluate the Opinion of Dr. Milliken-Zumel

The plaintiff also argues that "the ALJ erroneously failed to evaluate the January 2014 opinion of reviewing and examining psychologist Kirsten Milliken-Zumel." Statement of Errors at 6 (citation omitted). She adds, "[p]ursuant to the regulations applicable to this case, the ALJ was required to evaluate every medical opinion received into evidence, regardless of its source." *Id*. at 6-7. The commissioner contends this argument is so perfunctory that it is waived. *See* Opposition at 11-12. Although the plaintiff contested this point at oral argument, I agree with the commissioner that in the absence of any developed argumentation explaining why the ALJ's failure to evaluate Dr. Milliken-Zumel's opinion – which postdates the plaintiff's DLI by approximately seven years – was prejudicial, the plaintiff has waived this point. *See, e.g.*, *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do

counsel's work, create the ossature for the argument, and put flesh on its bones." (citations omitted)).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 16th day of October, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge